Good afternoon. Next case is Bruni v. City of Pittsburgh. Sir, Theriot? Theriot. It's close enough. Theriot. Theriot. Yeah. My apologies. Good afternoon and may it please the court, Kevin Theriot for the plaintiff's appellants. I'd like to reserve five minutes of my time for rebuttal. Granted. This court said the first time this case was up here that a buffer zone might be easy to enforce, but the primary objective of the First Amendment is not efficiency. Yet efficiency is the reason why Pittsburgh passed this blanket ban on speech on 30 feet of a public sidewalk. And they did so without considering the less restrictive alternatives that this court said that it was obligated to. That is enforcement of existing ordinances, a narrower injunction, trying an injunction first, or adoption of an ordinance like FACE or New York's anti-harassment statute. This court said that taking the allegations in the complaint is true, that the burden was significant and commensurate with that in McClellan. And for that reason, it would be the same burden if that was substantiated when things move past the motion to dismiss stage. But here we're reviewing a ruling on summary judgment. And so on that threshold question of whether the burden is indeed a significant one, a serious one, as the court described it in McClellan, triggering this requirement that the legislature considered alternatives or tried alternatives. What do we have in terms of undisputed facts in a record that support the existence of a serious or significant burden? Well, there are multiple undisputed facts, but I think the first thing to keep in mind is that in Schenck, the Supreme Court said that a 15-foot buffer zone there was a significant burden on speech. And that was confirmed in Hill, in McClellan, and recognized by this court in Bruney 1. And the second thing to keep in mind is that it's a very low burden. This court said in Bruney 1 that if it makes the speech more difficult, that's a significant burden on speech. And it certainly did in this case. My clients testified that it makes it more difficult for them to discount that. But I believe the court got that wrong because the Supreme Court in McClellan said that was a significant fact. And the reason why it was a significant fact is they have a difficult time establishing, first of all, who it is, and then being able to engage in a quiet, one-on-one conversation about an intimate thing. They don't want to shout about this. But the facts, to the extent they're undisputed, also include testimony from the plaintiffs that we're talking about a zone that is three to five steps and two to three seconds to move through that has developed in discovery that speakers can actually cross that zone. They're not just staying on the boundaries of it. They can, but Your Honor, my clients also testified that it's difficult to cross the zone. First of all, you can't have any literature in your hands when you cross the zone or be wearing a shirt that says anything. You have to go all the way around. Why is that true? The only thing that it regulates is congregating, patrolling, picketing, or demonstrating. Why can't somebody just walk through? I mean, I don't understand it. It doesn't say you can't be there, and you could walk through and say something to a person. You could stand there and wait until somebody comes. Maybe this applies to a tonsillectomy, for that automatically, but now they don't. There's a lot of new thinking on that, and I mean, I don't understand it. No matter what you're against, the only thing you can't do is congregate, patrol, picket, or demonstrate. It doesn't say you can't talk to a person even if you're in the barrier. What's the restriction on speech? I mean, it's a minor restriction because the city made findings that they couldn't control situations. Your Honor, it's undisputed that my clients can engage on the one-on-one conversation inside the zone that they would like to. Why not? Because of the face of the statute, right? This is a facial challenge. I understand your answer to relate to the designee of the city saying that. Yeah. On behalf of the city, right? That's correct. They're saying you can't talk within the zone. You can't leaflet. You can't speak within the zone unless it's about the weather or something like that. Or sports. Or time of day or directions. They've said those all four things, but they have interpreted it to apply to any sort of counseling. Yeah, but I had a case not so many years ago where the city of Pittsburgh passed an ordinance that was challenged under federal law that you couldn't live in large parts of Pittsburgh if you had certain criminal records, and we ended up deciding it on state law that the state law didn't permit it, even though the challenges were primarily federal. Well, if I were the judge and somebody was just talking to somebody in the 15-foot zone and they were challenged because they were standing there and they saw somebody going in and thought they were having an abortion, I would acquit them. I'd say, wait a second, they're not congregating, patrolling, picking, or demonstrating. So, I mean, the fact that somebody said something doesn't change the law. The law was written in a very weak way, in a way. Your Honor, I just would submit to you that at least according to this court's ruling in Brown on page 574 of that Brown v. Pittsburgh, the very first time this interpretation is taken into account when the court considers a facial claim, and here it's undisputed that the city interprets it to prohibit sidewalk counseling within the buffer zone. Has there been a prosecution for that? There have been no prosecutions, which is why it doesn't survive intermediate scrutiny. We also observed in Brown, though, citing to you the Supreme Court case law in Lakewood, that we must presume a narrowing construction of a law to which it's susceptible. So, to the extent that there's been that interpretation of the terms demonstrate and picket, why wouldn't we give it its ordinary meaning? The meaning that the Supreme Court itself and Hill made clear that it understood the terms picket and to demonstrate to exclude casual conversation. Well, certainly for the content-based aspect of our challenge, absolutely that comes into play. Now after Reed and McCullen, we think that you certainly have to read Hill in light of those, but at least as to intermediate scrutiny, whether or not, there's no dispute, and certainly viewing the facts in a light most favorable to the plaintiffs, there's no dispute that their speech is prohibited. And why doesn't it also go to the extent of the burden on speech? Because if it is permissible under this statute for your clients to engage in one-on-one communications in normal conversational levels within the buffer zone, then would you agree that the statute would pass intermediate scrutiny? Certainly, absolutely, but to date, and my colleague can speak to that when he gets up here, they have in their brief said that that's not true. They said at the preliminary injunction stage that that's not true, and Sergeant Hohas, who's their 36th witness, said that that's not true. But we read the statute. The fact that these people say that way, if you want to outlaw something, you've got to make it fairly clear. And then somebody was trying not to outlaw the thing that you're concerned about, and you want us to take this broad reading and then throw out the statute in a way that we're instruing the statute in a way it's not written. Well, it's certainly the way that it's being applied, Your Honor, and we still have... Wait a second. But this is a facial challenge. That's what I was getting at, right? I mean, I guess what I'm trying to get my mind around is demonstrate could be interpreted to mean demonstrative action, right? Waving your hands in somebody's face, you know, gesticulating, that could be demonstrate, right? But when you read the record in this case, the Sergeant Hohas says, no, no, demonstrate means talking to somebody, right? Congregate, when I think congregate, I think a group of people getting together. He testifies that someone can congregate by themselves, and that one of your clients can't stand in the buffer zone in Leaflet, right? That's the record we're dealing with. So we've got this strange dichotomy between what the plain language seems to suggest and what the city's designee is saying all that means. So what do we do with this? Do we need more fact-finding on this or... We haven't even gotten to Gilbert, you know, Reed v. Town of Gilbert, which I think is sort of the preliminary question, which is, is this a content-based statute or is it a content-neutral ordinance? Well, it's not, and I'd like to clarify just one thing, this is not... It's not what? It's not content-neutral. I'd also like to clarify that this is not just a facial... It's not content-neutral? Wouldn't it apply to a tonsillectomy? In other words, when I was a child, everybody used to get their tonsils out. Now I understand that that's no longer done. And maybe a person, at least in theory, could stand outside and see a child being taken into a hospital and wonder, gee, maybe that person is going to get a tonsillectomy and I better inform this person not to do that. And that wouldn't be any different than an abortion. But, I mean, I just don't understand it. I don't understand how municipal officers can take a statute that was so narrowly written and say it applies so broadly, and then we're supposed to accept that reading and then throw out the statute when the statute doesn't say that. The statute only talks about picketing, patrolling. To me, I think of patrolling as like the policemen going back and forth in front of a jewelry store, something like that. And congregating, that means at least two people, but probably a crowd. But you're trying to... You want us to accept this broad interpretation because local officials give it and then throw out the statute. Well, Your Honor, two responses to that. And also, I wanted to respond to Judge Hardiman's question about whether this is just a facial claim. It's not. It's also as applied. If you look at footnote one of our brief explains that all we dismissed was the as applied, the discriminatory enforcement, and didn't dismiss the as applied as interpreted by the city. Combine that with the Brown Statement that you take into account what they say for the facial claim. But there are at least four reasons why it's content based. The first is there's an impermissible motive. McCullen said that it's not content neutral if it's motivated by concern for impact. And I'm sorry, Your Honor. Go ahead. Okay. All right. So we have one case this afternoon. All right. Great. Time got away from me really quickly. But in McCullen, it said that if there's concern for the impact on the listener, that's not content based. And the record is very clear that what is trying to be done here, and this is a quote from the chair of the committee that heard this, is protecting the listener from unwanted communication. But that's intent. And Justice Thomas's opinion in Reed says, step one, we don't look to intent. Our task here isn't to try to right. The task is to look at the language of the statute of ordinance and ascertain whether it is content based or not. Right. And so that's one reason why it is. And I don't think you have to guess. That's in the record that what their intent was. Secondly, it discriminates based upon the function or purpose of the speech. And after Reed, function or purpose of the speech could include demonstrating picketing, congregating, or patrolling. And what the city has interpreted in page 51 of their brief is advocacy. They don't allow any advocacy. That's certainly the purpose of the speech, and that's content based. Don't we have controlling Supreme Court precedent that is still good law? I mean, as the McCullen dissenters pointed out, Hill has not been overruled. And the activities of demonstrating and picketing, which are the two terms with which you take real issue, as I understand it, have been treated as content neutral. The language of this statute, right, is taken directly from Madsen. And then we have in shank the court talking about the term demonstrate and treating that also as content neutral. How are we without Reed having explicitly overruled those cases, how are we to take controlling Supreme Court case law and say, in fact, those were content based restrictions and should have been subjected to strict scrutiny, not intermediate scrutiny? Well, they have to be read in light of Reed. And certainly, I think it's telling that Reed only cited Justice Kennedy's and Justice Scalia's dissents when they cited the rule of law from Hill. And so I think that's important. Obviously, this court can't overrule Hill, and I'm not suggesting they can't. I'm just suggesting that this court read Hill in light of Reed, excuse me, and McCullen. Because McCullen also said that if you have to look to the content of what's being said, then that is content based. So will you really have us hold that any ordinance, any restriction on demonstrating within a certain perimeter or picketing within a given perimeter is subject to strict scrutiny? I certainly would if after Reed, but of course, I don't think the court needs to get there, because I think we win even under intermediate scrutiny. Wouldn't that mean that sub salientio Reed is also overruling Snyder, which dealt with picketing? Instead, picketing is subject to reasonable time placed in manner. I'm sorry, I was just advised Judge Greenberg's connection and did so we're going to have to take a pause until we get him back on the phone. Hi, okay, Judge Greenberg, we're going to resume argument. I don't know, we got cut off somehow. I don't know why. Glad to have you back. All right. Now, what did I miss? Well, the last question posed was Judge Krause was asking counsel about Hill and subsequent precedents. So why don't we ask Judge Krause to re-ask the question, and if she remembers exactly the question. Did the argument go on after I was cut off? Well, I was advised, I think, within about 20 seconds of when you were cut off. All right, so there's no issue. All right, go ahead. We'll return to the question. You can hear the question and then hear the answer. My question related to whether we were being asked in adopting this position to say that any restriction on picketing or demonstrating would be deemed content-based and therefore subject to strict scrutiny, which would in essence mean that even a case like Snyder, which just dealt with picketing, would also have been overruled sub salentio by Reith. Snyder versus Phelps, but I believe that was subjected to strict scrutiny, is that right? And it was, of course, it wasn't an enforcement of any kind of ordinance. It was the defense of a defamation claim. Snyder was subjected to traditional, to ward, to regular time, place, and manner review. And maybe I'm thinking about the wrong case, but it's my understanding that Snyder versus Phelps, they asserted the First Amendment as a defense to a defamation claim because they were picketing at a funeral of a soldier. And the court said that that speech was protected and they couldn't be held liable for defamation because that speech was protected under Snyder versus Phelps. That's my understanding. And maybe I'm misunderstanding what your honor is talking about. But I think their difference is, first of all, there are multiple reasons why this is content-based. And I've already mentioned the fact that the impermissible motive, certainly as Judge Hardeman pointed out, you don't even get to that if it's unconstitutional on its face. But it is unconstitutional on its face because of its function and purpose, also because it discriminates based upon speaker identity. So interestingly, the way that it's been interpreted by the injunction that was issued by the district court is that my clients can't picket and demonstrate and neither can Planned Parenthood employees. But they can be in that zone to patrol and to congregate. And make no mistake, that is making a statement. As a matter of fact, their training manual says, at page 1339 of the record, that just the fact of them being there in their yellow vests makes a statement. And under Reed, the fact that it discriminates based upon speaker identity makes it content-based. And then, of course, we have, as we've already discussed, the fact that it discriminates based upon topic. Certainly, in Hill, the court said that the casual conversation didn't mean that it was content-based. Justice Kennedy's dissent is interesting. He said that's astonishing, and I agree with him. But there's some support for that now in Reed to say that it's astonishing because, especially on this record, where they've conceded that you can talk about the weather and you can talk about sports, it's not just asking the time of day. And after Reed, which talked about directional signs and time of the event, I think that that is significantly distinguishable enough, especially in this case, where you have the other factors indicating that it's content-based. But that goes back to the interpretation of the statute and whether one-on-one communications in normal conversational levels are indeed prohibited within the zone under the terms of the statute. And I want to ask you because, as I understand both the District Court's opinion and our prior opinion, it reflects that the challenge that is left is a facial challenge, not an as-applied challenge. Well, I think it's mistaken, Your Honor. I just respectfully submit that it's mistaken. If you look at footnote one, we explain why that is. We still have an as-applied challenge. We just dismiss that aspect of our challenge that had to do with disparate enforcement. And that's on page, so you see it in footnote one. It's docket numbers 29 and 31 of the docket. But that's a due process argument, right? Well, no, it's not. Because the selective enforcement viewpoint discrimination, that was withdrawn in the District Court. That's correct. We didn't withdraw our as-applied challenge to our First Amendment claim that it ordinance violates our rights by restricting our speech inside the zone. So I think that's very clear in the record. I think we made that clear in our brief. That hasn't been challenged by the city. And I think the District Court was mistaken in its characterization in that regard. Following up on Judge Krause's question, what if we were to write an opinion that said, the statute as written is fine, but of course, demonstrate does not include normal conversational speech? You sort of win by losing, right? Because then your clients can leaflet, they can speak, they can go in and counsel, they can do the sidewalk counseling, et cetera, right? If that's what demonstrate means, if demonstrate means gesticulating, being physically active, and your clients are not interested in being physically active, they're interested in counseling and trying to change hearts and minds, then the ordinance would be, do you have a problem with that? If, well, certainly if this court were to rule that our clients can engage in sidewalk counseling within the 30 court documents. Well, not just your clients, but if it's a facial challenge, anybody. The sort of Judge Greenberg's earlier point, should we construe the statute sort of narrowly in the normal wording to say that it doesn't prohibit speech, it doesn't prohibit leafleting, it prohibits demonstrating and picketing and congregating. And congregating is not one person, or perhaps not even two people talking or leafleting. Well, the person who wrote this statute had some knowledge of constitutional law and intentionally, I think, wrote it very narrowly, but not to hit one-on-one speech. I mean, if you wanted to write it to hit one-on-one speech, you wouldn't have written it the way you wrote it, the way it was written. Well, I think Your Honor makes a fair point because part of the ordinance that is no longer in effect specifically refers to counseling and education and oral protest, which is the same wording from Hill. Do you mean a personal buffer? Yes. Yes, Your Honor. And the district court judge actually brought that up at the preliminary injunction hearing and went round and round with counsel for the city and said, I don't think this even prohibits with my clients sidewalk counseling. And the counsel for the city does. And since then, they've said that it does. Now, if the court wants to... It might be a good time to hear from counsel for the city on that. We'll hear you on rebuttal. Okay. Thank you, Your Honor. And thank you for allowing me to continue. Certainly. Let's hear from Mr. McHale. Good afternoon. May it please the court. My name is Matthew McHale. I'm here on behalf of the city of Pittsburgh. The court should uphold the city ordinance against plaintiff's facial challenge. And I would begin first by just addressing that issue. It is my understanding, as I believe is reflected in the proceedings, that the plaintiffs have dismissed as applied challenge. It's obviously that's up to the court to look again at the record and decide. But I heard my opposing counsel say that the city has not... I believe you might have suggested the city is not disputing that the plaintiffs still have some as applied challenge left. And just to clarify, as the city said in its brief, we take the position that as applied challenges are gone and it's just a facial challenge. Right. And the facial challenge is a different standard than in non-First Amendment cases, right? It's easier for the plaintiffs to meet if a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep, right? The court has said that in the earlier decision in this case, that it's somewhat easier than other non-First Amendment cases. However, it is still a significant burden for the plaintiff, a plaintiff to meet. And as the court has been asking questions about, well, can we construe this? In a sense, can we find a way to uphold it? We would agree that that is an important question to be asking because along with that principle, that in a facial challenge, the plaintiff has a decently high burden to meet. There's also the principle that the court should avoid constitutional questions where fairly possible. And that would also, I would suggest, go to the issue of the Reed versus Town of Gilbert argument and whether it's content-based or content-neutral. Well, let's address that because our questioning of Mr. Theriault, I think, sort of posits that there's a possibility here that the plain language of this statute could be construed as content-neutral, but yet we're looking at a record here that it appears to me to be full of content-based interpretation, starting with the city's designee. The city's designee said congregate can be one person, correct? He did testify to that. And he also said that you can talk about the weather in the zone, talk about sports. Well, I guess I would suggest that it should not be, just because one way to look at whether it's content-based or content-neutral, I would suggest is, is it possible to imagine certain subjects being discussed in a certain manner where the ordinance would prohibit that kind of manner of expression? And what I mean by that is the sports question, the sports issue is a good one. I believe that if you were having a demonstration that involved sports, like, let's say you had pro-con Tom Brady factions or something like that, people who wanted to have some sort of public... That would be a one-sided argument. In the city of Pittsburgh, I can assure you. That's right. That's true. That's true. But, or let's say picketing, addressing the topic of sports or, or even the weather or other potential subjects like environmental issues or healthcare or any number of things. While it's true that if people are discussing that subject in a manner that is just casual conversation, that's not prohibited by the ordinance. If rather people are attempting to persuade others of their views in the manner of, in a manner such as demonstrating, then that would run afoul of the face of the ordinance. Why is that? How did the terms demonstrate and picket involve one-on-one conversation that is designed to persuade someone of something? That's a fair question. And I would, so I would say two things. One, I mean, I would agree that with opposing counsel that as I would suggest as written, and I'll get to that. And certainly as understood now by the plaintiffs and by the city, sidewalk counseling, sidewalk advocacy has been considered demonstrating at least. And second, so in direct response to that question, I would say that the Supreme Court in Schenck described, I believe the phrase was the form of demonstrating known as sidewalk counseling. So I think that alone suggests. Schenck's been severely undercut by McCullen though. Eight justices, McCullen said that the offense taken by the recipient of the unwelcome message that can't And I would say that, but, and I guess the point is, and this is the way that our brief tried to communicate this point about what is the meaning of demonstrate. I would suggest that the, however much Schenck has been undercut, the use of the term in that opinion was, is instructed as a matter of what does the word mean? What does the word demonstrating mean? Even if Schenck has gotten undercut because of subsequent decisions going to, yeah, protecting listeners is not enough. I think it remains a fact that the court understood that, just that word demonstrating and what it means to demonstrate as including, just as a matter of linguistic meaning, the form of demonstrating known as sidewalk counseling. But the facts of Schenck involved traditional demonstrating, right? I mean, that was not what is being advocated here by your colleague on the other side of the aisle, that the plaintiffs here represented what they seek to do is engage in one-on-one, caring, personal conversations in conversational tones and volumes, right? So that's a far cry from the conduct that was at issue in Schenck. And when the court was describing the term demonstrate there as something that could be, that any reasonable person would understand what was prohibited, they were on the facts of the case and in the ordinary meaning of the term, they seemed to be referring to the conduct that along with demonstrating as we generally understand it. Well, I suppose I would push back a little bit on the notion that it does not, that there is a concept of traditional demonstrating that the plaintiffs preferred methods of advocacy somehow, that somehow wouldn't fall under the term demonstrating. Well, let's look at it another way because we have from Reid, I mean, Reid makes clear that if what you have to do is examine the actual content of the speech to make a determination about whether it falls within the ordinance or not, then it's going to be content-based. If you have to do a cursory examination to determine that it is signage as opposed to another manner of communication, then it's going to be content neutral. If you're telling us that the statute, as you understand the terms or the city would construe the terms, means that we would have to, a court would need to distinguish and police officer would be asked to distinguish between speech that was persuasive versus speech that was simply informative. That seems to grapple head on with this concept of the actual content of the speech and making very delicate determinations about whether something is persuasive or informational. And if we think that that makes it content-based, aren't we right back into the realm of the doctrine of constitutional avoidance where we would need to interpret the statute to, if it's reasonably susceptible to that interpretation in a way that renders it constitutional? Yes, it would implicate the need to avoid a constitutional question like that. But we don't believe that Reid versus Town of Gilbert, which addressed a very different kind of ordinance that had 23 separate categories that explicitly divided up messages into political and religious, et cetera, et cetera, can be held to sub silentio, as you said, sort of overturn Hill and the other precedent that supports the ordinance. There are also aspects of the ordinance as written that further show that it is a content neutral regulation on location and manner of speech, like congregating, for example, or picketing, or patrolling, which has to do with- How could one person standing stationary in the zone, how could that be congregating? Well, to the extent that person is approaching someone else, that would be congregating that person. I assume if the zone weren't there, they'd like to stand there next to the door, not obstructing anybody, but stand near the door and just leaflet or talk. That's congregating? Well, to the extent they're joining up with other people and approaching them, then yes. I would say in response to that, that the plaintiffs have a little bit take different positions from each other as far as where they would be or choose to stand if the ordinance didn't exist. Ms. Bruni said she would actually stand in the same place. Others, at least one other did say that she or he would choose to stand a couple of feet, a few feet further toward the doors. Isn't the thing to do here is so much of this is based on hypotheticals as to what would happen to wait for an actual case and say, look, on the surface of it, the statute can be construed constitutionally, but in an actual case where there's actual facts, you might have an unconstitutional application of the statute, but we don't have it here because we don't have any application of the statute as I understand it. Well, Your Honor, I want to say one thing in response to that, which is I appreciate the concern about a parade of hypotheticals, which is a useful exercise, but I would actually just say that I do actually think that there is a rich factual record here that goes to a critical issue in the case now that there has been a factual discovery undertaken, and that is I think the plaintiff's own log, at one point it's called Log of Saved Babies, but it's essentially a compilation of written reports that Ms. Bruni had received from some of her allies in terms of engaging in the sidewalk advocacy, and I think that reading that gives you a sense of, on a very granular level, of the kinds of interactions that the plaintiffs are able to have, and that's significant because as the district court held, and as we believe, while the plaintiffs sort of focus on the available alternatives issue, you don't get there, I would suggest, unless the plaintiffs have shown a substantial burden on their free speech rights, and we think that one thing that that log shows is that there's no mention of the buffer zone in it, and the plaintiffs also confirmed in their depositions that there are no emails between them that they knew of that complained about the buffer zone being a problem, and further, that they had never heard from anyone that they spoke to, any patients or people accompanying patients or anyone that they had spoken to in the years that they've been doing this work, no one, to their recollection, told them, oh, I'm glad, anything about how the buffer zone was an impediment of some kind to the plaintiff's ability to get their message across. Why isn't that just to say that there's some lack of corroboration that could lead to a credibility determination at trial, by a trier effect, as to plaintiff's testimony that they are not as successful as they otherwise could be, or that they cannot be heard over the 15-foot distance, or that they are not able to leaflet because patients are surrounded by escorts. There's also, there is contrary testimony from the city's witnesses, but where we have disputed evidence in the record that goes to the question of whether the burden here is significant, and what is the extent of the burden, how could the district court be resolving those conflicts in the city's favor and drawing inferences in the city's favor at summary judgment? Well, I would suggest that the plaintiffs, the plaintiffs testify that they, in slightly different ways, that they have a feeling that they would be otherwise more successful without the buffer zone. But when you dig down a little bit underneath that and look at, number one, compare it to McCullen. In McCullen, there was also a developed factual record, but the difference was stark in the court's opinion. Well, McCullen was after a bench trial, right? There were... To be sure. There were findings that were made by a trier of fact and a fully developed record. We're on summary judgment, and where we have a district court who's making statements that include, for example, that the district court itself is drawing what it believes is the reasonable inference, that the reason women are not coming out to take literature is because they don't want to, as opposed to they aren't able to hear, or they... At that distance, they're suspicious of someone on the other side of the boundary. Isn't that per se reversible error in the application of the summary judgment standard? No, and I would say two things. One, in McCullen, which was after a bench trial, again, the statistics cited by three of the plaintiffs in that case were not disputed as far as I recall. McCullen and two other plaintiffs in that case described, I believe, something like after the Massachusetts law went into effect, they were able to have something like... It was like 1% of their previous success rate, and that wasn't really disputed in that case. And secondly here, I don't think it's enough to just say, essentially to speculate and to say, I feel like we would do better without the buffer zone when the basis for that is no comparison to other locations without a buffer zone, no experience with situations before the law. When asked, why do you feel this way? Why do you think you would be having more success? I don't want to characterize all the responses, but one response was, well, I think there's a mental or an emotional barrier for people to come and talk to me, where there's no... Of the dozens of people who have been recorded in the plaintiff's own log of talking to them, and the conversations that the plaintiffs and other sidewalk advocates have with women and people and of all sorts, patients and non-patients, are quite intense in some places. For no one to say anything about this, I would say, speculative inability or difficulty in sort of hearing the plaintiff's message, and that is not reversible error, I would suggest. But if it's speculative, it does seem to be the inverse of the summary judgment standard, because if it's speculative, then the speculation should go in favor of the non-moving party, not the moving party, right? Well, I would maybe then go beyond speculative, because as we began our brief, which I think plaintiffs have sort of disparaged it almost as, I think, stale, but I would just end by saying that going back to what Ms. Bruni said in response to the question about whether she had evidence that willing listeners are not getting her message, and she said that she didn't have any. And it is important to the city that the plaintiffs' First Amendment rights, that they are able to exercise their First Amendment rights, and we believe that the ordinance as modified by the permanent injunction does not place a substantial burden on those rights. Bruni said that at the preliminary injunction stage, and since then, with testimony from that they can't be heard at this distance, that they are not able to give literature because patients are surrounded by escorts, that they're not as successful as they could otherwise be, and that women are not coming outside of the perimeter because to take literature or communicate because they view people on the other side of that as suspicious, given the distances. The district court concludes that there is undisputed evidence in this case that plaintiffs are able to communicate their anti-abortion message using their preferred form of expression. How could the court conclude at this stage that that evidence is undisputed? Well, the plaintiffs need to show that there's a substantial burden on their right to communicate. And what the record shows is that there is not a substantial burden on their ability to communicate that message. Doesn't it show that there's a genuine issue of material fact as to whether it's substantial? No, because, again, there is not the kind of concrete evidence that a plaintiff would need to get past the summary judgment or to fend off the summary judgment hurdle. It's not enough to just say with no sort of specific basis for the feeling that there is some sort of barrier to communicating their message. There needs to be some grounding given to that. And where there is not anything like the kind of evidence in McCullen that led the Supreme Court to call that an extreme law and has put the plaintiffs in that case across the street and well down the sidewalks. Here, the plaintiffs all agree that at most you're talking about like two steps to get from the buffer zone to the door or maybe a second or two that they would have additionally. And they agree, and it's not in dispute, that they are not prohibited from continuing to inside the buffer zone and invite them to come out or just to talk to them. And as I recall, the log and the other written statements that the plaintiffs have compiled record any number of instances where the plaintiffs and their allies carry on conversations with people who are in the zone. People take leaflets. There's ample evidence that leafleting continues to a large degree. And again, that the plaintiffs have communicated their message in a way where at least it's not the relative success or failure rate that they may have is not being substantially burdened by the ordinance. And we would ask that the court affirm the district court. OK, I don't have any more questions of this. Thank you. OK, thank you, Mr. McHale. We'll hear Mr. Theriault's rebuttal. Unless the court has some specific questions, I have a couple of things I'd just like to point out. And that is, first of all, that the burden is not doesn't have to be substantial in order for intermediate scrutiny to apply. All that is required, as this court recognized in Bruny 1, is that the speech be made more difficult. And that's enough to shift the burden to the state to show that they considered less restrictive alternatives. The city, in this case. I said the state. Apologize. And they simply haven't done that. We talked in Bruny 1 about it being significant as a threshold to trigger the required showing by the legislature of the alternatives. That's right. And the Supreme Court talks in terms as well of a serious burden. So when you say just making it more difficult, are you suggesting there's no materiality standard at all that something that that pushed speakers back by one or two feet from the would require a legislature to show that it had considered or tried less restrictive alternatives? It would, Your Honor. And here's why. It still has to go through the process. Now, it may be easier to establish that substantially less restrictive alternatives were tried and or didn't need to be tried because they weren't substantially less restrictive. But the standard on page 367 of Bruny quotes McClellan. It says, when the government makes it more difficult to engage in these modes of communication, it imposes an especially significant First Amendment burden. And that's enough to trigger the process of having to shifting the burden to the city so that they have to show that less restrictive alternatives. I think it's undisputed on the record that they didn't consider less restrictive alternatives. So we should survive intermediate scrutiny. I'd like to also point out, with Your Honor's permission, that the facial challenge that the Salerno standard doesn't apply, Stevens doesn't apply, and this Court said very clearly in Bruny, we don't have to dream up some hypothetical situation where the ordinance might be constitutional. All that's required is that you apply the test. And the difference between a facial and as-applied challenge is really as to the remedy, not into how the test is applied. And I think that's made very clearly in Bruny 1 and the Supreme Court case in Stevens. I think I just wanted to also clarify that this case is very much like McClellan when it comes to the evidence of significant burden. And as I've said, we've cataloged that in our reply brief at pages 4 to 8. But they also had success, over 80 successes in McClellan. And they didn't have any of these deep statistics. Basically, what Mrs. McClellan said is, had far fewer instances of people being persuaded, even though she had 80 that were. So the evidence is very similar to McClellan as to the actual burden. And of course, we just wanted to point out, too, that in Schenck, that certainly there was a prohibition on demonstrating. But the injunction in that case, which is much narrower than a broad ordinance that applies 365 days a year, 24-7, it allowed two sidewalk counselors into that 15-foot buffer zone. And then I just wanted to reiterate, I know I've already said this, that Schenck was very clear that a 15-foot buffer zone made it very difficult to have one-on-one conversations and to exchange literature. And the Supreme Court in Hill was very careful to point out that that was problematic. But an eight-foot zone wasn't, which was an issue at Hill. And more importantly, as Judge Hardiman alluded to, in Hill, they could stand right by the entrance as long as they didn't move. And they could say whatever they want to. And they could hand literature to whomever they want to. They just couldn't approach someone. And even in Hill, one thing that's distinguishing this from Hill, even in Hill, the court was very clear that if there was discrimination based upon topic or they had to look at what was said in order to enforce the ordinance, then it was unconstitutional. I think based upon what my colleagues said just now and the way they've interpreted it so far, and that is that they prohibit advocacy. You have to look at the content of the speech in order to determine if it's advocacy. And that's content-based. And so not only does it not survive intermediate scrutiny, but it doesn't survive strict scrutiny. In that case, is there some reason that the doctrine of constitutional avoidance would not apply? There isn't any reason why it wouldn't, Your Honor, other than the fact that the way the city has interpreted it, the way the district court interpreted it, makes it apply to sidewalk counseling in this particular instance. And I think that's problematic. And it gives you the same place that they were in McCullen, where actually they banned even standing there. Here, they're making distinctions based upon speech content. And I think what the court in McCullen said, that a painted line on the sidewalk is easy to enforce. But the prime objective of the First Amendment is not efficiency. And that's really what this is about. It's easier for the city to enforce the painted line on the sidewalk. That's why they passed the ordinance. That's why they drew it. But that's also why it's unconstitutional. Unless the court has any further questions, I am— Judge Greenberg, do you have any additional questions? No questions. All right. Thank you, Mr. Terrio. Thank you, Mr. McHale, for the excellent briefing and argument. We'll take the matter under advice. Thank you, Your Honor.